**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| HEATHER DYSE, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> HEALTHALL CONSULTING, LLC <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | CA No. 1:19-cv-10704-PBS |

**PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL**
**OF FLSA SETTLEMENT AGREEMENT AND**
**MEMORANDUM OF LAW IN SUPPORT THEREOF**

## I.    INTRODUCTION

Plaintiff Heather Dyse ("Plaintiff" or "Dyse"), individually and on behalf of the Settlement Collective defined below, hereby submits her unopposed motion for approval of her FLSA Settlement Agreement with Defendant HealthAll Consulting, LLC.[1] This settlement resolves the claims of Plaintiff and the Settlement Collective under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") for a total of $195,000.00. As detailed below, this proposed resolution of the Plaintiff's and Settlement Collective's FLSA claims is fair and reasonable and warrants judicial approval. Defendant does not oppose this Motion.

Because the proposed settlement is a fair and reasonable resolution of a bona fide dispute, Plaintiff respectfully requests that Court enter an order:

---

[1] The Settlement Agreement is attached hereto as Exhibit A.

1

1. Granting final approval of the Parties' FLSA Collective Action Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act.

2. Granting final certification to the Settlement Collective pursuant to 29 U.S.C. § 216(b), for settlement purposes only:

   > Plaintiff and the Opt-In Plaintiffs (i.e., individuals who as of May 21, 2020 have filed an Opt-In Consent Form with the Court in <u>Dyse v. HealthAll, LLC</u>, No. 1:19-cv-10704 (D. Mass.)) (the "Settlement Collective").

3. Approving the Gross Settlement Amount of $195,000.00 in resolution of this action.

4. Approving the proposed service award in the amount of $5,000.00, from the Gross Settlement Amount, to Plaintiff Heather Dyse for her service to the Settlement Collective.

5. Approving Plaintiff's unopposed request for attorneys' fees, in the amount of $65,000.00 and out-of-pocket costs and expenses, not to exceed $1,550.00, both of which are to be paid from the Gross Settlement Amount.

6. Dismissing this action with prejudice upon Court approval of the settlement.

7. Reserving exclusive and continuing jurisdiction over this action, the named Plaintiff, and the Settlement Collective for purposes of supervising the implementation and enforcement of the Settlement Agreement, this Order, and all settlement administration matters.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On July 15, 2019, Plaintiff Dyse filed the above-captioned case in the U.S. District Court for the District of Massachusetts, against HealthAll on April 12, 2019, alleging overtime claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Dkt. 1. Specifically, Plaintiff

alleged that HealthAll provides training and support to medical facilities in connection with the implementation of new electronic recordkeeping systems, and employ consultants, such as Plaintiff and the Settlement Collective, to perform such training and support services throughout the United States. Plaintiff alleges that although she and the other consultants routinely worked in excess of forty (40) hours a week, HealthAll paid them solely on a straight hourly basis for hours over forty (40). In other words, HealthAll failed to pay them overtime compensation at a rate of one and one-half (1 ½) times their regular pay rate for hours worked in excess of forty (40) hours per week, as required by the FLSA.

Plaintiff filed her Motion for Conditional Certification in August 2019. Dkt. 28. After a hearing, the Court granted Plaintiff's motion in part in December 2019, certifying a collective of all consultants who provided training and support services for HealthAll in Huntsville, Alabama. Dkt. 42. A total of 37 individuals subsequently opted into the case, including Plaintiff Dyse. Lichten Decl. ¶ 6.

In the following months, the Parties exchanged written discovery relating to the Plaintiff and the opt-ins, including thousands of pages of document production by HealthAll, and Plaintiff took the deposition of Robert Luciano, president of HealthAll. Id. ¶ 7. Plaintiff's Counsel conducted a detailed damages analysis based on the timekeeping and pay records produced by Defendant, and after back-and-forth negotiations, were able to reach this Settlement Agreement. Id. ¶¶ 8-9. In reaching agreement on the Gross Settlement Account, Plaintiff's counsel took into account HealthAll's financial condition, including the overall decline on go-live support work, as well as the impact of the COVID-19 pandemic on Defendant's business. Id. ¶ 17.

**III.   TERMS OF THE SETTLEMENT AGREEMENT**

The Settlement Agreement provides for a Gross Settlement amount of $195,000.

Settlement Agreement ¶ 10(f). The Gross Settlement Amount includes sums to cover a service award to Plaintiff Heather Dyse in the amount of $5,000.00; attorneys' fees in the amount of one-third of the gross settlement amount, or $65,000.00; and costs not to exceed $1,550.00. Id. ¶ 10(h). The Gross Settlement Amount resolves the claims of Plaintiff and the Settlement Collective, consisting of individuals who opted into this case – a total of 37 people. Id. ¶¶ 10(i), (p).

    In agreeing to the Gross Settlement amount, Plaintiff's Counsel took into account, among other factors, HealthAll's asserted financial instability and inability to pay a substantial judgment in this action. Id. ¶ 6. HealthAll will make payments to fund the Gross Settlement Amount as follows: Within thirty (30) days of the Approval Order, HealthAll shall electronically transfer Fifty-Five Thousand Dollars ($55,000.00) to an escrow account maintained by Plaintiff's Counsel. Beginning thirty (30) days after that first payment, HealthAll shall then make seven (7) additional monthly payments in the amount of Twenty Thousand Dollars ($20,000.00) each, to be postmarked or submitted by wire transmission on the same day of each month, resulting in a total payment of One Hundred and Ninety Five Thousand Dollars ($195,000.00). Id. ¶ 14.

    After the Settlement is fully funded, Plaintiff's counsel will disburse the Service Award to Plaintiff Dyse and attorneys' fees and costs, and will distribute settlement award checks to Settlement Collective Members. Id. ¶¶ 15-17. Each Settlement Collective Member shall receive a per capita award of $50 from the Net Settlement Amount; the remainder of the Net Settlement Amount will be allocated among the Settlement Collective Members based on the number of overtime hours they worked for Defendant. Id. ¶ 17.[2] Settlement Collective Members will have 180 days to cash or deposit their checks; at the conclusion of the 180-day period, remaining

---

[2] Plaintiff's Counsel may, in their discretion, make settlement award distributions as soon as they receive sufficient funds from Defendant to cover the Net Settlement Amount. Settlement Agreement ¶ 19.

proceeds from uncashed checks will be donated to the *cy pres* recipient chosen by the Parties, MA COVID-19 Relief Fund. Id. ¶¶ 20-21.

In exchange for the consideration offered by the Settlement Agreement, the Settlement Collective Members will release HealthAll and its parent companies, subsidiaries, affiliates, business units, members, shareholders, and its predecessors and successors, officers, directors, agents, employees, and assigns from any and all claims of any nature whatsoever, known or unknown, arising out of or related to the payment of wages that accrued while working as an At-The-Elbow Consultant with Defendant at any time during the Relevant Time Period, including but not limited to, any claims Plaintiff and the Opt-In Plaintiffs may have under the Fair Labor Standards Act, and other applicable state, federal, county or local wage ordinances, statutes or regulations, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses. Id. ¶¶ 10(l)-(m). Importantly, only individuals who sign, deposit or cash their settlement checks will release claims against HealthAll. Id. ¶ 11.

## IV.     ARGUMENT

As discussed below, because the Settlement reached by the Parties represents a fair and reasonable resolution of a *bona fide* dispute, the Court should enter the accompanying proposed order approving the Settlement of the Settlement Collective Members' FLSA claims; finally certifying the proposed collective for purposes of settlement; approving a service award to Plaintiff Heather Dyse in the amount of $5,000.00 and approving the award of attorneys' fees of 1/3 of the Gross Settlement Amount ($65,000) and and costs not to exceed $1,550.00.

### A.     Standard for Settlement Approval under the FLSA.

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages,

or their unpaid overtime compensation, as the case may be . . . ." 29 U.S.C. § 216(b). The FLSA's provisions are mandatory and, generally, are not subject to bargaining, waiver, or modification by contract or private settlement. Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945). The two limited circumstances in which FLSA claims may be compromised are (1) when the Secretary of Labor supervises the settlement pursuant to 29 U.S.C. § 216(c) or (2) when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). Cheeks v. Freeport Pancake H., Inc., 796 F.3d 199, 206 (2d Cir. 2015); Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor, 679 F.2d 1350, 1353 (11th Cir. 1982). "Requiring judicial or DOL approval of such settlements is consistent with what both the Supreme Court and our Court have long recognized as the FLSA's underlying purpose: 'to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" Cheeks, 796 F.3d at 206 (quoting A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 493 (1945)).

### B.   The Settlement is Fair and Reasonable Under the FLSA

"The Court may approve the settlement upon a finding that all parties to the action have agreed to it, and that it represents a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" Singleton v. AT&T Mobility Services, LLC, 146 F. Supp. 3d 258, 260 (D. Mass. 2015) (quoting Lynn's Food Stores, Inc., 679 F.2d at 1355). The settlement in this case satisfies these criteria. In this case, a bona fide dispute exists regarding Plaintiff's FLSA claims. Plaintiff has alleged that she and the Settlement Collective Members were misclassified by HealthAll as independent contractors, and, as a result, were not paid the overtime premium for hours worked in excess of 40 hours per week. See Complaint, Dkt. 1. HealthAll has denied these allegations, and it maintains that the Settlement Collective Members were properly classified as independent contractors. Lichten Decl. ¶ 11. This is sufficient to establish the existence of a bona

fide dispute. See, e.g., Singleton, 146 F. Supp. 3d at 261 ("the Court agrees that the parties' proposed settlement represents a fair and reasonable resolution of this dispute, and that the settlement was reached through arms-length negotiations . . . and it finds that the early settlement of this dispute will avoid potentially lengthy and expensive litigation over what appears to be a modest amount of alleged damages."). In addition, had this case gone forward, Defendant would have likely disputed the propriety of final collective certification in this case. Lichten Decl. ¶ 12. Defendant would have also argues that it acted in good faith with regard to the classification of Plaintff and Settlement Collective members, and that liquidated damages are not warranted. Id. ¶ 13. Thus, the Settlement Agreement reflects a reasonable compromise of disputed issues related to the merits as well as collective treatment of the Plaintiffs' claims.

The Settlement also provides a significant recovery for Plaintiffs in this case, particularly given Defendant's financial condition, the general decline of the g-live support industry, and the effect of the COVID-19 pandemic. Settlement Agreement ¶ 6; Lichten Decl. ¶ 17. The Gross Settlement Amount represents approximately 56% of the Settlement Collective Members' overtime damages, based on a detailed analysis the possible overtime damages for each of the Plaintiffs were they eventually successful at trial. Lichten Decl. ¶¶ 8-10, 16. The settlement is an excellent result for the Settlement Collective Members in light of HealthAll's economic condition, the COVID-19 pandemic, and the likelihood that, should litigation go forward, the Collective Action members may recover nothing at all, or may face a significantly reduced recovery. Id. ¶ 17.

The formula for allocating settlement awards to the Settlement Collective Members is also fair and reasonable. The Settlement Agreement provides for a distribution formula where each Settlement Collective Member will receive a *per capita* award from the Net Settlement Amount,

7

and the remainder of the Net Settlement Fund will be allocated among Settlement Collective Members based on the number of overtime hours that they worked for Defendant during the Relevant Time Period as a fraction of the overtime hours worked by all Settlement Collective Members. Settlement Agreement ¶ 17; Lichten Decl. ¶ 18. Thus, those individuals who worked more overtime hours for Defendant will receive more under the Settlement Agreement. Lichten Decl. ¶ 18. The scope of the release in the Settlement Agreement is also fair and reasonable. In exchange for the consideration contained in the settlement agreement, the Settlement Collective Members will release HealthAll and its parent companies, subsidiaries, affiliates, business units, members, shareholders, and its predecessors and successors, officers, directors, agents, employees, and assigns from all claims against HealthAll related to the payment of wages which accrued during their time providing at-the-elbow support for HealthAll, as well as associated claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses. Settlement Agreement ¶¶ 10(l)-(m); Lichten Decl. ¶ 19. Importantly, only individuals who sign, cash or deposit their settlement checks will release claims against HealthAll. Lichten Decl. ¶ 19.

## C. Certification of the FLSA Collective Pursuant to 29 U.S.C. § 216(b) is Appropriate for Settlement Purposes

This Court has already found that Plaintiff and Settlement Collective Action Members are similarly situated for purposes of conditional certification. For settlement purposes only, the Court should now grant final certification to the Settlement Collective. "At the second stage [following conditional certification], the Court is tasked with making 'a factual determination as to whether there are similarly-situated employees who have opted in.'" Prescott v. Prudential Ins. Co., 729 F. Supp. 2d 357, 364 (D. Me. 2010) (quoting Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 916 n. 2 (5th Cir.2008)). "To make this determination, 'courts consider factors such as: 1) the disparate factual and employment settings — e.g. whether plaintiffs were employed in the same corporate

department, division, and location; 2) the various defenses available to defendant which appear to be individual to each plaintiff; and 3) fairness and procedural considerations.'" Roy v. FedEx Ground Package System, Inc., 353 F. Supp. 3d 43, 67 (D. Mass. 2018) (quoting Roberts v. TJX Cos., 2017 WL 1217114, at *3 (D. Mass. Mar. 31, 2017)) (internal quotation marks omitted).

Plaintiff and the Settlement Collective Members in this case are similarly situated, as they performed the same tasks, which generally consisted of providing support and training to healthcare staff in connection with the implementation of a new electronic recordkeeping system. Lichten Decl. ¶ 15. They worked similar schedules and were subject to the same compensation policies and practices. Id. They were paid a set hourly rate and were not paid time-and-a-half for hours worked in excess of forty a week. Id. In sum, Plaintiff has demonstrated the existence of a collective of similarly situated employees, such that collective certification of the collective sought herein is appropriate for settlement purposes. Id.

### D.     The Proposed Service Payment to the Named Plaintiff is Fair and Reasonable

The settlement also provides for a service payment of $5,000 to Plaintiff Heather Dyse, which is fair and reasonable. Plaintiff Dyse took on the risk of stepping forward and bringing this case against Defendant DB Health on behalf of other employees. Lichten Decl. ¶¶ 23-25. Ms. Dyse provided her contracts, timesheets and other documents relevant to her work with HealthAll and helped Plaintiff's Counsel develop their theories of liability and damages models. She also provided significant assistance to Plaintiff's Counsel as they drafted the Complaint, reviewed Defendants' document production, and prepared a settlement demand. Id. ¶ 24. The modest incentive award of $5,000 fairly recognizes the services that she has performed in advancing the Settlement Collective Members' interests and the time that she dedicated to this lawsuit. Id. ¶ 25.

Courts in this Circuit have routinely recognized the importance of such awards in wage and hour cases of this nature. See Lauture v. A.C. Moore Arts & Crafts, Inc., 2017 WL 6460244 at *2 (D. Mass. 2017) (quoting Bozak v. FedEx Ground Package System, Inc., 2014 WL 3778211 at *4 (D. Conn 2014)) "in employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." The court in Lauture recognized the significant "benefits of plaintiffs bringing wage and hour collective and class litigation because, without them, other employees may not assert their rights due to fears 'of retaliation or of being 'blackballed' in [their] industry,'" and approved a $15,000.00 incentive award to each class representative. Lauture, 2017 WL 6460244 at *2 (quoting Shahriar v. Smith & Wollensky Rest. Group, Inc., 659 F.3d 234, 244 (2d Cir. 2011)). The modest service award requested in this case properly compensates Plaintiff Dyse for the risks she took on in coming forward to bring this case, particularly in view of the fact that Ms. Dyse continues to work in the healthcare industry.

### E. The Attorney's Fees and Costs Provision of the Settlement Agreement Fairly Compensates Plaintiffs' Counsel for the Time and Expense of Litigating This Matter.

The Settlement Agreement further provides for the payment of Plaintiff's attorneys' fees in the amount of $65,000.00 (33% of the Gross Settlement Amount), and costs of up to $1,550.00. Settlement Agreement ¶¶ 10(h), 16. Plaintiffs' Counsel have collectively spent more than 250 hours advocating on behalf of Plaintiff and the Settlement Collective, for a combined lodestar of $104,376.00. Lichten Decl. ¶ 28; Declaration of Sarah R. Schalman-Bergen ("Schalman-Bergen Decl.") ¶¶ 12-17; Declaration of David M. Blanchard ("Blanchard Decl.") ¶ 13. The requested award of $65,000.00 is therefore reasonable and should be approved. Plaintiff's Counsel are also

entitled to recover their out-of-pocket costs, including costs associated with the administration of the settlement in the months to come.

Counsel's contingency fee agreement provides for recovery of fees equal to 33% of the gross recovery, so Plaintiffs' Counsel's request is in line with their fee agreement. In fact, fee requests similar to the one made by Plaintiffs here have routinely been approved by courts, particularly in employment cases. See In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D. Mass. 2005) (approving attorneys' fees of 33 and 1/3%); Scovil v. FedEx Ground Package System, Inc., 1:10-CV-515-DBH, 2014 WL 1057079, at *5 (D. Me. Mar. 14, 2014) ("contingent fees of one-third are common" and "consistent with wage-and-hour settlements in the neighboring jurisdiction of Massachusetts"). Notably, the amount Plaintiffs' counsel will receive is significantly less than their fees when calculated under a lodestar method. Their lodestar amount, based on 284.9 hours of attorney time would be $104,376.00, which far exceeds the fee award requested under the Settlement Agreement. See Lichten Decl. ¶ 28; Schalman-Bergen Decl. ¶¶ 10-11, 20; Blanchard Decl. ¶ 13. Given Plaintiff's Counsel's substantial experience in wage and hour litigation,[3] and the result achieved for the Plaintiffs, this fee request is reasonable.

---

[3] Attorney Harold Lichten, one of the lead counsel for Plaintiffs, has been lead or co-counsel in numerous wage and hour cases in the United States, and has successfully argued cases arising under state and federal wage laws before the Seventh, Third, Eleventh, and First Circuit Courts of Appeal and the Supreme Courts of New Jersey and Massachusetts. See, e.g., Costello v. BeavEx, Inc., 810 F.3d 1045 (7th Cir. 2016) (affirming denial of defendant's motion for summary judgment and vacating District Court's denial of class certification in wage and hour action); Scantland v. Jeffry Knight, Inc., 721 F.3d 1308 (11th Cir.2013) (reversing grant of summary judgment to Defendants in FLSA action); Hargrove v. Sleepy's, LLC, 220 N.J. 289, 106 A.3d 449 (2015); Schwann v. FedEx Ground Package Sys., Inc., 813 F.3d 429 (1st Cir. 2016); Chambers v. RDI Logistics, Inc., 65 N.E.3d 1 (Mass. 2016); Somers v. Converged Access, Inc., 911 N.E.2d 739 (Mass. 2009). Similarly, Sarah R. Schalman-Bergen of Berger Montague PC, another of the lead counsel in this case, has an extensive background in litigation on behalf of employees, and currently serves as lead or co-lead counsel in many employment class and collective actions in federal courts across the country, including unpaid wage cases similar to this case. Schalman-Bergen Decl. ¶¶ 2-4; Ex A.

Plaintiff's Counsel are also entitled to an award of their out-of-pocket costs. In addition to its provision for reasonable attorneys' fees, the FLSA provides for the reimbursement of costs. See 29 U.S.C. § 216(b). Thus, awards of reasonable out-of-pocket costs incurred by Plaintiff's Counsel are routinely approved by courts as part of FLSA settlements. See, e.g., Lauture v. A.C. Moore Arts & Crafts, Inc., 17-CV-10219-JGD, 2017 WL 6460244, at *3 (D. Mass. June 8, 2017) (approving Plaintiffs' request for costs as part of FLSA settlement, including costs of settlement administration); Marrotta v. Suffolk County, 726 F. Supp. 2d 1, 4 (D. Mass. 2010) (awarding attorneys' fees and costs to plaintiffs as part of FLSA settlement). Plaintiff's Counsel have, to date, incurred costs in the amount of $1,280.13. See Settlement agreement. ¶ 10(h); Lichten Decl. ¶ 28; Schalman-Bergen Decl. ¶¶ 22-30; Blanchard Decl. ¶ 16. They seek an award of costs not to exceed $1,550.00, to account for the added costs of settlement administration. See Settlement Agreement ¶ 10(h); Lichten Decl. ¶ 30. Plaintiff's request for costs is therefore reasonable and should be approved.

### V. CONCLUSION

Because the Settlement reached by the Parties in this case is fair and reasonable, and meets the requirements for FLSA settlement approval, this Court should enter an Order:

1. Granting final approval of the Parties' FLSA Collective Action Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act.

2. Granting final certification to the Settlement Collective pursuant to 29 U.S.C. § 216(b), for settlement purposes only:

    Plaintiff and the Opt-In Plaintiffs (i.e., individuals who as of May 21, 2020 have filed an Opt-In Consent Form with the Court in Dyse v. HealthAll, LLC, No. 1:19-cv-10704 (D. Mass.)) (the "Settlement Collective").

3. Approving the Gross Settlement Amount of $195,000.00 in resolution of this action.

4. Approving the proposed service award in the amount of $5,000.00, from the Gross Settlement Amount, to Plaintiff Heather Dyse for her service to the Settlement Collective.

5. Approving Plaintiff's unopposed request for attorneys' fees, in the amount of $65,000.00 and out-of-pocket costs and expenses, not to exceed $1,550.00, both of which are to be paid from the Gross Settlement Amount.

6. Dismissing this action with prejudice upon Court approval of the settlement.

7. Reserving exclusive and continuing jurisdiction over this action, the named Plaintiff, and the Settlement Collective for purposes of supervising the implementation and enforcement of the Settlement Agreement, this Order, and all settlement administration matters.

Dated:  June 26, 2020            Respectfully submitted,

HEATHER DYSE,
 individually and on behalf of others similarly situated,

/s/ Olena Savytska___
Harold Lichten
Olena Savytska
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
hlichten@llrlaw.com
osavytska@llrlaw.com

David M. Blanchard*
Frances J. Hollander*
BLANCHARD & WALKER, PLLC
221 N. Main Street, Suite 300

Ann Arbor, MI 48104
Telephone: 734.929.4313
blanchard@bwlawonline.com
hollander@bwlawonline.com

Sarah R. Schalman-Bergen*
Alexandra K. Piazza*
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
sschalman-bergen@bm.net
apiazza@bm.net

*Attorneys for Plaintiff
and the Collective*

*\*admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2020, a copy of this document was served by electronic filing on all counsel of record.

                               /s/ Olena Savytska
                               Olena Savytska